Yes, Your Honor. Good morning, and may it please the court. Elidoro Moreno, Jr. for the petitioner Eyama Authur. The BIA abused its discretion when it held that Ms. Authur's prior attorney did not render ineffective assistance of counsel when he failed to investigate and present all of the legal and factual basis for Ms. Authur's asylum claims. Now, in order for an alien to prevail on an IEC claim, in the context of a motion to reopen, the alien must show two things. First, the alien must show that counsel failed to perform with sufficient competence, and then that the alien was prejudiced by counsel's performance. Here, the BIA did not reach the question of prejudice or whether the time and numerical limitations on motions to reopen should be equitably told, and denied Ms. Authur's motion to reopen solely on its finding that Mr. Canfield did not fail to provide competent representation. Now, the BIA's decision contains two critical errors. First, the Board's decision seems to suggest that Ms. Authur's statements are not credible when it states, it declines to find that counsel was ineffective here, particularly in a case where Ms. Authur was found not credible by the IJ. Now, to the extent that the Board did so, that is clearly legal error, because this Court's case law has made clear that statements included in a declaration accompanying a motion to reopen must be taken as true unless they are inherently unbelievable, which they are not in this case. Now, the BIA points to Mr. Canfield's statement in his response that it is his standard practice to ask every applicant what would happen to the applicant if she returned to her home country, as support for its conclusion that Ms. Authur's statements are not credible. However, this would be making a credibility determination, which the Board cannot do under this Court's case law, because it would be — because it could not do so in adjudicating a motion to reopen. In Boston, this Court held that a motion to reopen is decided without a factual hearing. Thus, the Board is unable to make credibility determinations at that stage of the proceedings. So if the Board believed that there was a factual dispute between Mr. Canfield's response and Ms. Authur's declaration, then the proper thing to do would have been to remand the proceedings to the immigration judge to hold an evidentiary hearing on that purpose. However, even if we assume that Mr. Canfield did, as Ms. — did ask Ms. Authur what would happen to her if she returned to her home country, which, by the way, very importantly, his response does not say that he did. It only says that that is his pattern of practice, clearly indicating that he has no independent recollection of what he did in this case. But if we assume that he — Excuse me, Mr. Reynolds, he asked that in open court, didn't he? He did ask that in open court, Your Honor, but I would say that that would be irrelevant because that was a final question to sum up what Ms. Authur and Mr. Canfield was already presenting to the judge, which was a claim solely based on political opinion. Thus, it would have been rare indeed for Ms. Authur to then start speaking about her history of domestic violence when simply that was not what was being presented to the Court. Now — Counsel, what do we — how do we handle the fact that the petition is — the reopening petition is untimely? Well, Your Honor, that is — that question is not before the Court at this time. The only question before the Court now is whether Mr. Canfield's representation was competent. And that is because — Well, that is because the first step in this motion to reopen analysis is to determine whether it meets — whether his performance was competent, and if it was not, then was the alien prejudiced. Then the Court needs to determine whether equitable tolling applies in that they couldn't — that the alien could not have applied earlier, filed a motion to reopen based on the ineffective assistance of his first attorney, which was Mr. Canfield. And that could either include that there was IEC by the second attorney, which that is not also before this Court, because that only goes to whether the time and numerical limitations on motions to reopen should be equitably tolled. So the only question is, was Mr. Can — did Mr. Canfield fail to perform with sufficient competence? And he did so. Mr. Moreno, let me — let me tell you the problem that I have with the case, and you set me — set me straight. Okay. If I take her — her declaration as true, she shows up at Canfield's office with a written statement of a political opinion claim that contains a factual recitation of what the basis of the claim is. She then goes back to his office several times and discusses that with Canfield and never reveals to Canfield anything else. Then they go to court, and she's asked that open-ended question is, what would happen to you? She never says anything about domestic violence. She loses and gets another lawyer. She never tells the other lawyer anything about domestic violence. And I'm having a hard time finding where if a lawyer is presented with a written statement saying, this is the claim I want to present, and then presents that she loses, how we find that that's ineffective assistance. Well, Your Honor, Mr. Canfield — there's no evidence in the record that Mr. Canfield was told by Ms. Arthur, here, Mr. Canfield, I would like you to represent me, and this is the claim that I would like to represent. What happened here was that Ms. Arthur, once her asylum application was referred to the immigration court, she then hired Mr. Canfield and presented him what had been filed, which was filled out by a non-attorney by not — by simply asking her her political reasons for being — for not wanting to return to Cameroon. Now, when the — when Your Honor asks, you know, how was Mr. Canfield ineffective, well, quite simply, when — when Mr. Canfield is approached by a new client who's applying for asylum, particularly one where the asylum application was filled out by a non-attorney, but regardless of whether it was or not, Mr. Canfield should review that application and ask every question on that application of the client. For example — Okay, let me stop you there. What — what case holds that? Excuse me, Your Honor? What — what case holds that? Well, I don't have any case that holds that specifically, Your Honor, but if we're discussing — Okay, let me ask — okay, then let me ask you — then let me ask you — we don't have a case. What ABA guideline requires a lawyer to do that? Well, Your Honor, there's a — there's an ABA rule, and I cannot recall if it's 1.1 or 1.2, but specifically states that an attorney must act competently, and that includes researching every possible legal and factual basis in order to succeed in whatever claim that they're presenting. But here we're talking about an immigration attorney that's representing someone who had applied for asylum that was referred to the immigration court. So here, in order to — No, let me ask you this, then. Do you have — do you have any expert opinion from an immigration lawyer saying this is the standard of care required of immigration lawyers? No, we do not have an expert opinion. However, we're talking about what would a reasonable attorney in Mr. Canfield's place do, and any reasonable attorney here would have reviewed every question on the asylum application to determine, one, if everything that — every basis for which she feared to go back was in the application, but also the claim that she did present, was it correct? And Mr. Canfield did not do so. Well, I'm not sure — I'm not sure whether you're arguing that he didn't do legal research or that he simply didn't — never interviewed the client properly. Yes, he — he did not, Your Honor, and if we're — Not what? Oh, he did not interview the client properly, and he should have done that by, at a minimum, asking the questions on the asylum application. For example, in page 661 of the administrative record, the asylum application, the very first question asks, have you, your family, or close friends or colleagues ever experienced harm or mistreatments or threats in the past by anyone? If you answer yes, then ask them to describe what happened, who committed it, and why do you think that it occurred? Now, Mr. Canfield didn't do any of that. When he described his pattern or practice in all cases, all he said was that he asked one simple question. Now, we would posit that that is simply not sufficient, especially from a client who does not have any legal experience, especially considering the complications of asylum law, and here did not even think that domestic violence would be something that would be relevant at all, especially since in Cameroon it's considered a personal family matter. Clearly here, ultimately, the board either discredited Ms. Arthur's statements by making a credibility determination, which it is unauthorized to do, or it credited her statements and clearly erred by holding that all an attorney needs to do in order to be competent was ask what would happen if you would return to your home country. We argue that that is simply not sufficient in order to be a competent attorney. You at least have to ask the questions on the asylum application, which he did not do. Thus, this petition for review needs to be granted and remanded for consideration of prejudice and whether equitable tolling will be applied. Thank you. Counsel, may I just toss in one question? Is there any relevance to this point, that her lack of credibility seems to be determined by reference to inconsistencies with her initial applications that were riddled with errors because they were prepared by non-lawyers. Is there anything to that, and does it have any meaning in the case? It does not, Your Honor. For the context of the motion to reopen, we're just based on what was presented in her declaration, both about her domestic violence claim, but also about the ineffective assistance of counsel claim. Her declaration previously is irrelevant to what she's stating now, and there's really no inconsistency. But if we were to, if reopening were granted, then the credibility would be before the agency, right? Yes, of course, Your Honor. Now, once the case would be remanded, of course, an immigration judge would then make that determination. This is just to allow Ms. Arthur to present the claim. Right. Thank you. Thank you. Anything, Rotary Judge Garbus? No. Okay. Thank you. Thank you. For the government, please. Good morning, Your Honors. Jonathan Robbins here on behalf of the Attorney General. May it please the Court. The issue before the Court today is whether or not the Board abused its discretion in denying Petitioner's motion to reopen. And the short answer is no, it did not abuse its discretion because Petitioner did not demonstrate that her former counsel was ineffective. What she did demonstrate is that she didn't tell her former counsel the claim that she now wants to bring before the Court. She instead brought another claim and supposedly had this claim just sort of lying in her back pocket. And when she lost on her first claim, that's the only time that she raised this new claim to her current attorney. You know, I think it's probably worth noting that the claim that she's bringing now isn't consistent with the first claim that she brought. If you look at the record, the first claim that she brought, Mr. Canfield, was a claim based on political opinion. And if you look at the record in her affidavit accompanying that asylum application, she makes a claim that she was arrested on March 6th of 2002 because of her political opinion. And then after that arrest on March 6th of 2002 in her home, after that she went to prison and then escaped prison and never returned home and went into hiding and eventually left for the United States. Now contrast that with what she's raising in her current motion to reopen, which is based on that she left her house in 2001 and never returned to her house. So the claim, essentially her ineffective assistance of counsel claim is this. I told my attorney I was over here in 2002. He didn't draw a story out of me in which I'm claiming something totally different. So she had no reason to bring that claim. It's not consistent with the claim that she brought to her attorney then. She's trying to blame her attorney after the fact. But this isn't ineffective assistance of counsel. Her counsel did exactly what he was supposed to do. Both her counsel did exactly what they were supposed to do. They presented the claim that she told them. They took her at her word that she was in this certain place at a certain time and didn't ask the question, hey, have you been somewhere else or are you not telling me the truth? So I think the facts here are pretty... Aren't you just arguing that she's lying? No. Again, my colleague mentioned that the board essentially made an adverse credibility finding. That's not what they did. Let's look at exactly what they did. They said the board declines to find that counsel was ineffective here, particularly in a case where the respondent was found not credible by the IJ board and 9th Circuit. The key word there is particularly. In other words, what they're saying is we would have found this is ineffective assistance of counsel anyway, but it is particularly appropriate here where the alien wasn't credible. And for exactly the reasons I just stated. Her claim isn't consistent. She's essentially saying that her attorney should have known that she had a completely different story that wasn't consistent with the claim that she was actually telling the attorney at the time. That also gets into this other problem that she's essentially saying my attorney didn't ask me the right question, which would unlock this claim that I had hiding in my back pocket the whole time. He didn't specifically ask me if I had undergone domestic abuse, but that's not how things work practically when an alien goes in to counsel. The counsel asks general questions saying, do you have any harm in your home country? Are you facing any problems? They don't go through a checklist saying, were you ever beaten by your husband? Did you ever undergo a forced abortion? Did you ever undergo FGM? It would be an unlimited list of specific questions to ask. That's not a practical way of how it works. What a competent attorney does is exactly what the attorneys did in this case. Mr. Canfield said, look, I asked her questions. What's going to happen if you go back into Cameroon? And she only mentioned a political asylum claim. She never mentioned a domestic violence claim. It was only after she lost that she raised it for the first time. That is not ineffective assistance of counsel. What about the nature of the culture of that country where domestic violence possibly is something you just don't talk about? She's not claiming that she didn't want to talk about it. She's claiming that she desperately wanted to talk about it, but that he didn't ask the right question to unlock that so she could tell him. She's saying she wanted to tell him. She says in her affidavit specifically she was trying to tell him about it but she's not clear. And again, this goes to the problem of meeting her burden of proof on the motion to reopen. She doesn't say exactly how she was trying to describe her life in Cameroon and he somehow didn't get it. She tries to allege that maybe there was some sort of problem with the English translation, except that doesn't really go anywhere because she testified in English. She's from the English-speaking part of Cameroon. So that really didn't hold a lot of water. And the board noted that. So in terms of meeting her burden of proof, it demonstrates that her former counsel is incompetent. I mean, she doesn't come anywhere close. Was domestic violence a ground for asylum when she originally filed or had her original hearing? I think you're referencing the board's decision in matter of RA. It seems to me that it was sort of up in the air. In matter of RA, it looked like the Attorney General was stopping a stay of these cases because they were sort of figuring out what to do. I think there was a proposed rule with respect to domestic violence cases. So I don't think that it was something that the attorneys should have automatically raised at the time. But again, essentially we'd be saying that the attorneys, we'd be creating a bright line rule that says that anytime an attorney asks somebody from Cameroon asks a woman from Cameroon any questions about an immigration case, they have to ask her, have you ever been physically abused by your husband? That just doesn't make a whole lot of sense. The attorneys did what reasonable attorneys do in this case. They ask general questions, including as your Honor noted on the open record in court. And it's up to the petitioner. It's a petitioner's responsibility to answer those questions fully. It's just creating a rule where attorneys basically have to ask an unlimited set of questions to underline to get to claims that their clients might be hiding. And as your Honor noted, there's no law or regulation or ABA rule that requires an attorney to do that. What an attorney has to do is try to get, ask general questions, try to focus in on what the claims are and if the petitioner doesn't give them the claim that is the basis that she's claiming now is the main reason that she left, she doesn't even mention that to them that's not the attorney's fault, that's her fault. She had the opportunity and she squandered it. It's as simple as that. Are there any further questions? Judge Garbus, any other questions? No, I don't. Thank you. Thank you, Mr. Robbins. Mr. Moran, you used up your time, but we'll give you two minutes in rebuttal if you'd like. Thank you, your Honor. I appreciate it. Your Honor, the government counsel here is arguing that Ms. Arthur is requesting that whenever someone from Cameroon is applying for asylum that an attorney has to ask were they a victim of domestic violence. And she is not asking that. She has never asked that. All we're saying is that it is simply not sufficient to ask only what would happen to you if you returned. And that is all that Mr. Canfield stated that is his pattern of practice to ask. He needed to do more. An attorney, in order to be competent, must do more than that. And at the very least, they must ask the question on the I-589, which specifically asks, have you ever been harmed in your home country at any time by anybody? Mr. Canfield never asked that question. And we say that that constitutes ineffective assistance of counsel. But what's made clear here is that even if Ms. Arthur would have told Mr. Canfield that she was a victim of domestic violence, Mr. Canfield wouldn't even have presented it. In his reply, Mr. Canfield specifically states that although the BIA denial of domestic violence claim for asylum under the nexus of a particular social group and matter of RA in 1999 was overturned in 2001, at the time of Ms. Arthur's application, there was no guidance on the issue that would have required me to interrogate Ms. Arthur on a family issue. However, the precise fact that the Attorney General overturned matter of RA in 2001 shows that the Attorney General was reconsidering its position on domestic violence, as it finally did in matter of ARCG. Excuse me, Mr. Rand. I'm not clear why you are referring to Canfield's affidavit if all we are supposed to look at is her... Oh, no, Your Honor. My argument was never that we do not look at her statement. We're going to look at everything that was submitted in the motion to reopen. All I was saying regarding her statement is that it has to be taken as true unless inherently unbelievable. But here Mr. Canfield's response is critical. It's particularly because the BIA specifically used it in its decision and cited to it. But here we have to say that any competent attorney, like RA's attorneys and many attorneys afterwards, they would have presented the domestic violence claim regardless of whether there were guidance on the issue. Let me see if Judge Schroeder or Judge Garbus have anything else. No, I guess not. Thank you both counsel. We appreciate your cooperation in setting this up through this video feed. Thanks again. We'll stay good side of counsel and we'll ask Judge Garbus to stay put and we'll confer with him.
judges: Schroeder, Silverman, Garbis